[Cite as *Kougher v. Kougher*, 194 Ohio App.3d 703, 2011-Ohio-3411.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KOUGHER | ) | CASE NO. 10 MA 54 |
| | ) | |
| APPELLEE , | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| KOUGHER, | ) | |
| | ) | |
| APPELLANT.) | | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas, Domestic Relations Division, of
Mahoning County, Ohio
Case No. 08 DR 497

JUDGMENT:                               Vacated.  Remanded.

APPEARANCES:

Mark Lavelle, for appellee

James E. Lanzo, for appellant

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  June 29, 2011

WAITE, Presiding Judge

{¶ 1} Appellant, Charles E. Kougher Jr., appeals the decision of the Mahoning County Court of Common Pleas, overruling his motion to terminate shared parenting. Appellant and appellee Tara C. Kougher agreed to shared parenting of their seven-year-old child as part of their divorce decree. Appellant contends that the trial court used the wrong standard in reviewing the motion to terminate shared parenting. Appellant argues that a motion to completely terminate shared parenting is reviewed under a standard different from a motion to modify shared parenting. Although the Ohio Supreme Court in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, required courts to first find a change in circumstances when modifying shared parenting, appellant argues that no change in circumstances is required when a party requests a complete termination of the shared-parenting decree. Appellee has not filed a brief in this appeal. Appellant is correct that under R.C. 3109.04(E)(2)(c), a court may terminate a shared parenting decree without the need to first find that a change in circumstances has occurred. While the trial court relied on our holding in *Surgenavic v. Surgenavic*, 7th Dist. No. 08 MA 29, 2009-Ohio-1028, the trial court has misinterpreted that holding. We specifically stated in *Surgenavic* that "R.C. 3109.04(E)(2)(c) is not applicable * * *" in that case. Thus, we had no need to discuss or interpret R.C. 3109.04(E)(2)(c) at that time. Id. at ¶ 9. In the instant appeal, however, appellant directly relies on an interpretation and application of R.C. 3109.04(E)(2)(c), and there has been no rebuttal from appellee. We agree with appellant that his motion to terminate shared parenting should not

have been overruled based on the failure to argue or find a change in circumstances. Instead, the trial court should have looked solely at the best interests of the child in determining whether to grant or deny the motion. The judgment of the trial court is hereby vacated, and the matter is remanded for review based on that standard.

## History of the Case

{¶ 2} The parties were married on July 19, 2002. One child was born during the marriage. The parties did have another child together prior to their marriage, but custody of this child falls under the jurisdiction of the Mahoning County Court of Common Pleas, Juvenile Division, and is not at issue in this appeal. Appellee Tara Kougher filed for divorce on September 2, 2008, and the case was assigned to a magistrate. Appellant filed a pro se answer to the complaint and requested to be designated as the residential parent of the child. The court designated him as the child's residential parent during the divorce proceedings because he had been the primary caregiver. On March 9, 2009, appellant obtained counsel to represent him in the divorce proceedings. The parties negotiated a separation agreement, and the agreement was incorporated into the subsequent decree of divorce. The parties incorporated a shared-parenting order into their separation agreement, and this also became part of the divorce decree. Although appellant agreed to shared parenting prior to the magistrate's final decision, he had misgivings shortly after the magistrate filed his decision granting the divorce. Appellant filed objections to the magistrate's decision. The objections were subsequently overruled on July 1, 2009, and the shared-parenting order was made a part of the divorce decree.

{¶ 3} On August 8, 2009, appellant filed a motion to terminate shared parenting. In the motion, appellant sought complete termination of shared parenting; he did not seek modification of the shared-parenting order. The magistrate had a hearing during which the sole issue was whether there had been a change in circumstances since the issuance of the divorce decree approximately one month earlier. The magistrate found that there had been no change in circumstances and overruled the motion on December 9, 2009. Appellant filed objections to the magistrate's decision, and these were overruled on March 1, 2010. Appellant filed this timely appeal on March 31, 2010. Appellee has not filed a brief in this appeal. Under App.R. 18(C), we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

### ASSIGNMENT OF ERROR

{¶ 4} "The trial court erred by applying the decision in *Fisher v. Hasenjager*, 2007-Ohio-5589 to a motion to terminate an original shared parenting order pursuant to R.C. 3109.04(E)(2)(c), thus requiring a change of circumstances in contradiction to the clear language of the statute."

{¶ 5} Appellant argues that the trial court erroneously applied the holding found in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, which requires the court to find a change in circumstances before modifying parental rights in a shared-parenting decree. Appellant contends that *Fisher* is limited to situations in which a party is attempting to modify, rather than terminate, a shared-

parenting decree. Appellant is correct that *Fisher* dealt with a problem arising from a request to modify parental rights under a shared-parenting decree rather than a motion to completely terminate such a decree. *Fisher* specifically dealt with a dispute between the application of R.C. 3109.04(E)(1)(a) and R.C. 3109.04(E)(2)(b). R.C. 3109.04(E)(1)(a) requires that before modifying a shared-parenting *decree*, a trial court must first find that a change in circumstances has occurred, while R.C. 3109.04(E)(2)(b) deals with the modification of a shared-parenting *plan*. This modification requires a finding that it is being done in the best interests of the child. Id. at ¶ 10. Importantly, both provisions deal with *modifications* to shared parenting, rather than complete termination of shared parenting.

{¶ 6} *Fisher* emphasized that it was dealing with situations in which a party wants to maintain some aspects of shared parenting, but also asks the court to modify in some way the allocation of parental rights, such as the designation of who is the residential parent. *Fisher* was interpreting R.C. 3109.04(E)(1)(a), which states:

{¶ 7} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated

by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶ 8} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

{¶ 9} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

{¶ 10} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 11} Although the language of R.C. 3109.04(E)(1)(a) appears, at first glance, to cover all situations dealing with any change to a shared parenting decree, the next section of the statute clearly provides an alternative review when a party desires to completely terminate shared parenting. R.C. 3109.04(E)(2)(c) states:

{¶ 12} "(2) In addition to a modification authorized under division (E)(1) of this section:

{¶ 13} "* * *

{¶ 14} "(c) *The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children.* The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under

division (D)(1)(a)(ii) or (iii) of this section if it determines, upon its own motion or upon the request of one or both parents, that shared parenting is not in the best interest of the children. If modification of the terms of the plan for shared parenting approved by the court and incorporated by it into the final shared parenting decree is attempted under division (E)(2)(a) of this section and the court rejects the modifications, it may terminate the final shared parenting decree if it determines that shared parenting is not in the best interest of the children." (Emphasis added.)

{¶ 15} The wording of the statute leads to the inescapable conclusion that R.C. 3109.04(E)(2) and its subsections provide different procedures from those set forth in R.C. 3109.04(E)(1) and its subsections. *Fisher* specifically did not decide whether the change of circumstances required under an R.C. 3109.04(E)(1)(a) modification review had any bearing on a review pursuant to R.C. 3109.04(E)(2)(c). *Fisher* noted that the case had come to the court with certain assumptions already established from the appellate court's decision: "Despite the trial court's language 'terminating' the parties' shared-parenting plan, the court of appeals reviewed the parties' motions and the trial court's entry and determined that the trial court had not terminated the parties' shared-parenting plan but instead had modified the plan. As a result, the court of appeals determined that R.C. 3109.04(E)(2)(c) did not apply. Further, because the parties did not jointly move to modify their shared-parenting decree, R.C. 3109.04(E)(2)(a) also was not applicable." *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 6.

{¶ 16} "In conclusion, we hold that a modification of the designation of residential parent and legal custodian of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child, pursuant to R.C. 3109.04(E)(1)(a)." Id. at ¶ 37.

{¶ 17} Obviously the court in *Fisher* was aware that different sections of R.C. 3109.04(E) apply different standards, depending on the relief that is actually being sought by the parties. "Finally, we note that R.C. 3109.04(E)(1)(a) and 3109.04(E)(2)(b) contain significantly different standards for modifications. * * * To read both sections, with different standards, to apply to a court's analysis modifying the decree modifying a child's residential parent and legal custodian would create inconsistency in the statute. Two different standards cannot be applied to the same situation." Id. at ¶ 32. The court's analysis applies equally to the standard found in R.C. 3109.04(E)(2)(c), which is different from the one set forth in R.C. 3109.04(E)(1)(a). Each section of the statute must be interpreted on its own terms as well as in relationship to other parts of the statute. If the statute itself unequivocally states that a best-interests test, alone, applies in determining a motion to completely terminate shared parenting, then there is no basis to first apply the test to determine whether a change in circumstances exists.

{¶ 18} Although this court, in *Surgenavic*, 2009-Ohio-1028, did apply *Fisher* to a case involving termination of a shared-parenting *plan*, it has not yet applied *Fisher* to a case involving a motion that seeks complete termination of shared parenting, which includes the termination of the shared-parenting decree as well as the shared-

parenting plan. As noted in *Fisher*, there are major differences between the shared-parenting plan (which implements the specific day-to-day details of shared parenting) and the decree itself (the order granting shared-parenting rights or designating parental rights and responsibilities). When the shared-parenting decree is terminated, the court must start from scratch and create a completely new parenting order, acting as if there had never been any earlier allocation of parenting rights. R.C. 3109.04(E)(2)(d). The appellate courts that have dealt with this specific question have concluded that R.C. 3109.04(E)(2)(c), clearly labeled in the statute as a different procedure from that detailed in R.C. 3109.04(E)(1)(a), requires only that the termination of a shared-parenting decree be in the best interests of the child and that *Fisher* does not apply to R.C. 3109.04(E)(2)(c): *Beismann v. Beismann*, 2d Dist. No. 22323, 2008-Ohio-984, ¶11-13; *Francis v. McDermott,* 2d Dist. No. 1753, 2009-Ohio-4323, ¶ 9-10; *In re J.L.R.*, 4th Dist. No. 08 CA 17, 2009-Ohio-5812, ¶ 28; *Clyburn v. Gregg*, 4th Dist. No. 09CA3115, 2010-Ohio-4508, ¶ 10, fn. 1; *Rogers v. Rogers*, 6th Dist. No. H-07-024, 2008-Ohio-1790, ¶ 11-13; *Poshe v. Chisler*, 11th Dist. No. 2010-L-017, 2011-Ohio-1165, ¶ 21. Each of these cases determined that it would be erroneous to apply a change-of-circumstances test when dealing with a motion to completely terminate shared parenting pursuant to R.C. 3109.04(E)(2)(c).

{¶ 19} The trial court cited a number of appellate opinions supposedly taking the opposite view. The first of these, *In re Illig*, 3d Dist. No. 12-08-26, 2009-Ohio-916, does not interpret R.C. 3109.04(E)(2)(c) or apply it, and the fact that the court was required to find a change in circumstances was not being challenged on appeal.

The second case, *Sims v. Durant*, 5th Dist. No. 2008-CA-27, 2008-Ohio-6442, appears to be a summary opinion reviewing the weight of the evidence in support of the finding that a change in circumstances occurred. The parties did not appear to raise whether the change in circumstances test was appropriate, but only whether the evidence of record supported the magistrate's findings. Once again, R.C. 3109.04(E)(2)(c) is not interpreted or even mentioned.

{¶ 20} The third and fourth cases cited by the trial court deal specifically with termination of a shared-parenting plan rather than a motion for complete termination of the shared-parenting decree and plan pursuant to R.C. 3109.04(E)(2)(c). Thus, these cases do fall squarely under the *Fisher* holding. Because it was inapplicable, R.C. 3109.04(E)(2)(c) is not mentioned or discussed in either case. *Posey v. Posey*, 4th Dist. No. 07CA2968, 2008-Ohio-536; *Caldwell v. Caldwell*, 12th Dist. Nos. CA2008-02-0019, and CA2008-03-021, 2009-Ohio-2201.

{¶ 21} We are not aware of any caselaw in which, when the court was confronted directly with the interpretation and application of R.C. 3109.04(E)(2)(c), a different conclusion was reached and the court specifically held that the change-in-circumstances test was a threshold requirement to decide a motion seeking complete termination of shared parenting.

{¶ 22} Although there is, in the most technical sense, no document in this record specifically captioned as a "shared parenting decree," the order that appellant is attempting to terminate in its entirety is, in all respects, a shared-parenting decree incorporating a shared-parenting plan. Appellant requested a complete termination

of all aspects of shared parenting, and the trial court should have applied R.C. 3109.04(E)(2)(c) and utilized only the "best interests" test. As clearly stated in R.C. 3109.04(E)(2)(c), "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." This statutory subsection was not reviewed in the majority opinion of the Ohio Supreme Court's *Fisher* case, and we must allow the plain words of the statute to speak for themselves.

{¶ 23} The dissent in this appeal provides a lengthy argument that, in essence, R.C. 3109.04(E)(2)(c) does not mean what it says and should be ignored, and that the Ohio Supreme Court's *Fisher* opinion requires that the change-of-circumstances test be applied when terminating a shared-parenting decree pursuant to R.C. 3109.04(E)(2)(c). Unfortunately, the dissent's argument appears to be based on three rather important erroneous assumptions. Initially, the dissent assumes that *Fisher* encompassed a ruling requiring the change-of-circumstances test to be applied to R.C. 3109.04(E)(2)(c), when in fact, *Fisher* did not. *Fisher* did not even discuss R.C. 3109.04(E)(2)(c). Hence, the dissent's interpretation of *Fisher* as support for that specific statutory section is puzzling. Second, the dissent assumes that *Surgenavic,* 2009-Ohio-1028*,* involved interpretation of, or a ruling on, R.C. 3109.04(E)(2)(c) and thus provides precedent for applying the change-of-circumstances test in this appeal. As stated above, in *Surgenavic,* we clearly stated that R.C. 3109.04(E)(2)(c) was not applicable, and thus, that statutory section was

not reviewed. Id. at ¶ 9. Third, the dissent assumes that the General Assembly did not intend to enact the language as it clearly appears in R.C. 3109.04(E)(2), namely, that section (E)(2) "is in addition to a modification authorized under division (E)(1) of this section." We cannot share in this assumption, either.

{¶ 24} We also note that the dissent creates and addresses an argument that was never raised in this matter, since appellee did not file a brief and, thus, presented no argument at all. When the appellee fails to file a brief, App.R. 18(C) directs us to accept the appellant's statement of the facts and issues as correct and to reverse the judgment if it appears reasonably warranted. We are not, however, directed to make appellee's arguments for her. Appellant's arguments are sound and reasonable, and a number of cases from other appellate districts also find the argument made by appellant to be reasonable. Although there may be equally reasonable arguments supporting an outcome different from the one we have reached, those have not been made in this appeal. Appellant's assignment of error is sustained.

## Conclusion

{¶ 25} Appellant sought to terminate shared parenting by invoking R.C. 3109.04(E)(2)(c), which allows a party to file a motion to terminate a shared-parenting decree (and the accompanying shared-parenting plan) in the best interests of the child. Appellant has alleged that the trial court erred by requiring him to show that a change in circumstances occurred before terminating shared parenting. Appellant is correct that the Ohio Supreme Court's holding in *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E. 2d 546, does not require a finding of a change in

circumstances when a party attempts to completely terminate a shared-parenting decree under R.C. 3109.04(E)(2)(c). As appellee makes no argument, and pursuant to App.R. 18(C), we sustain appellant's assignment of error. We hereby vacate the judgment of the trial court and remand this case so that the trial court may determine whether the termination of shared parenting is in the best interests of the child.

Judgment vacated

and cause remanded.

Vukovich, J., concurs.

DeGenaro, J., dissents.

DeGenaro, J., dissenting.

{¶ 26} The majority and I differ on how to interpret *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546; *Surgenavic v. Surgenavic,* 7th Dist. No. 08 MA 29, 2009-Ohio-1028; and R.C. 3109.04. As I read the statute and *Fisher,* there is a three-part analysis a trial court must engage in before modifying the allocation of parental rights and responsibilities where the original decree making the allocation designated both parents as residential parent and incorporated a shared-parenting plan rather than a visitation plan: first, a change in circumstances must be found pursuant to R.C. 3109.04(E)(1)(a); second, it must be determined whether it is in the best interest of the child(ren) to terminate the shared-parenting pursuant to (E)(2)(c); third, pursuant to (E)(2)(d), modification of the decree with respect to the designation of the residential parent must be made pursuant to the best-interest

factors contained in (F)(1) in accordance with the procedures in (A), (B) and (C). Further, this court's decision in *Surgenavic* succinctly and correctly followed *Fisher,* as did *In re Illig,* 3rd Dist. No. 13-08-26, 2009-Ohio-916. For these reasons I would affirm the trial court and certify a conflict to the Ohio Supreme Court.

{¶ 27} The Supreme Court in *Fisher* was split in its interpretation of R.C. 3109.04. That appellate districts in this state, as well this district internally, differ in how to interpret *Fisher* and R.C. 3109.04 in the context of modifying an original decree designating parental rights and responsibilities that incorporates a shared-parenting plan, rather than the more common circumstance of a visitation plan, makes the cumbersome nature of the statute self-evident. It also makes the case for statutes to be crafted in such a fashion that they address single issues. That said, review of the trial court's decision must begin with a review of R.C. 3109.04.

{¶ 28} Principles of statutory construction dictate that courts determine legislative intent by analyzing the purpose of the statute and the language of the statute itself, and in doing so reading language regarding the same subject in pari materia. *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 20. Thus, the entirety of R.C. 3109.04 must be discussed. R.C. 3109.04 governs the initial allocation of parental rights and responsibilities and the procedure to follow, the factors to consider, and the options available to the trial court in doing so. The statute likewise governs the process, factors, and options when the trial court is considering whether or not to modify the original allocation.

{¶ 29} R.C. 3109.04(A) provides that in any proceeding pertinent to the allocation of parental rights and responsibilities, the court shall make the allocation either (1) "primarily to *one of the parents*, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children," R.C. 3109.04(A)(1); or (2) "to *both parents* and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting." R.C. 3109.04(A)(2). The first circumstance is more common, where the original decree designates *one parent* as the residential parent, with the other parent's rights to companionship and care for the child(ren) governed by a *visitation plan*. In the second circumstance, which is at issue here, the original decree designates *both parents*[1] as residential parent, with companionship and care for the child(ren) governed by a *shared-parenting plan*.

{¶ 30} When allocating parental rights and responsibilities "in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). The best-interest factors listed in R.C.

---

[1] This occurs in most cases; however, courts have named only one parent as residential parent in the original decree that incorporates a shared-parenting plan -- for example *In re J.L.R.*, 4th Dist. No. 08CA17, 2009-Ohio-5812. This factual distinction does not affect the analysis and is provided for factual accuracy.

3109.04(F)(1)(a) through (j) are to be considered in either "an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities." In addition to these ten factors, when a trial court is considering whether shared parenting is in the best interest of the child(ren), five additional factors must be considered. R.C. 3109.04(F)(2). If either/both parents files a motion "requesting the court to grant both parents shared parental rights and responsibilities" pursuant to R.C. 3109.04(G), the procedure to be followed by the trial court is contained in subpart (D). If shared parenting is approved, the *plan* "shall be incorporated into a final shared parenting *decree granting the parents the shared parenting* of the children." (Emphasis added.) R.C. 3109.04(D)(1)(d).

{¶ 31} Such is the process for an original allocation of parental rights and responsibilities, which is journalized in a decree of divorce, dissolution, etc., and incorporates either a *visitation plan* or a *shared-parenting plan*. Which type of plan is adopted by the trial court is driven by how it allocated parental rights and responsibilities in its *decree*, to one or both parents*.* Further, the above statutory language also guides the modification of the original decree's allocation of parental rights and responsibilities.

{¶ 32} When either or both parents seek to modify the designation of the residential parent in a prior decree, R.C. 3109.04(E)(1) is the only mechanism to do so. *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 21. This subpart of the statute, quoted by the majority above at ¶ 7-10, sets the burden of

proof that the moving party must meet and the standard the trial court must apply, in order to modify what is colloquially referred to as a prior custody order. But as noted in *Fisher*, key terms for analytical purposes are not defined by the statute: "parental rights and responsibilities," "custody and control," "residential parent," and "legal custodian." Id. at ¶ 22-23. The court synthesized these terms by holding that "parental rights and responsibilities" is the right to ultimate legal and physical control of a child, and these rights reside in *the party or parties* whom the trial court designates as residential parent and legal custodian. (Emphasis added.) Id.

{¶ 33} Based upon this rationale and language from subpart (A)(2) and subpart (L)(6),[2] *Fisher* concluded that a shared-parenting order allocates parental rights and responsibilities; and in the absence of a specific designation or the context of the decree indicating otherwise, "each parent is a residential parent and legal custodian of the child[.]" *Fisher* at ¶ 24-25. "Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an *order* designating the residential parent and legal custodian." (Emphasis added.) Id. at ¶ 26.

{¶ 34} This brings us to the crux of this appeal and where I dissent from the majority's analysis. As this court in *Surgenavic* succinctly and correctly held:

{¶ 35} "Although Appellee requested 'termination' of the shared parenting plan, R.C. 3109.04(E)(2)(c) is not applicable in this case. The Ohio Supreme Court,

---

[2] *Fisher* cited the former numeration of this subpart section, which was (K)(6). The subpart in both versions of the statute states: " 'Unless the context clearly requires otherwise and except as otherwise provided in the order, if an order is issued by a court pursuant to this section and the order provides for shared parenting of a child, each parent, regardless of where the child is physically located or with whom the child is residing at a particular point in time, as specified in the order, is the "residential parent," the "residential parent and legal custodian," or the "custodial parent" of the child.' "

in *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, recently recognized that a shared parenting plan is not the vehicle by which a trial court designates a residential parent or legal custodian. Id., ¶ 31, 876 N.E.2d 546. Because the designation of the residential parent and legal custodian involves the allocation of parental rights and responsibilities, 'R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian.' Id., ¶ 26." *Surgenavic,* 2009-Ohio-1028, at ¶ 9.

{¶ 36} In both this case and *Surgenavic,* the original decree provided for a shared-parenting plan, and consistent with R.C. 3109.04(L)(6), both parents were designated as residential parent. In both cases, regardless of the terminology used, one parent sought to modify the decree by seeking to be made the *sole* residential parent. Thus, in both cases, consistent with the language in R.C. 3109.04(E)(1)(a) and *Fisher,* the moving party bore the burden of proving that there was a change in circumstances before the trial court could modify the allocation of parental rights and responsibilities. *Fisher* articulated the policy and separation-of-powers reasons for requiring this heighten scrutiny by the trial court, and this court in *Surgenavic* echoed identical policy reasons:

{¶ 37} "The requirement that a parent seeking modification of a prior decree allocating parental rights and responsibilities show a change of circumstances is purposeful: ' "The clear intent of [R.C. 3109.04(E)(1)(a) ] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the child

a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." ' *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, quoting *Wyss v. Wyss* (1982), 3 Ohio App.3d 412, 416, 3 OBR 479, 445 N.E.2d 1153.

{¶ 38} "Further, '[t]he General Assembly is the policy-making body in our state and has restricted the exercise of judicial authority with respect to modification of a prior decree allocating parental rights and responsibilities. This legislation comports with our rationale regarding stability in the lives of children as a desirable component of their emotional and physical development.' *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶ 28. We note that another statute that addresses orders granting legal custody of a child sets forth the same standard for a modification. R.C. 2151.42(B) also requires a court to find that a 'change has occurred in the circumstances of the child or the person who was granted legal custody' and that modification is in the best interest of the child before modifying an order granting legal custody. See *In re Brayden James* at ¶ 26." *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 34-35. See also *Surgenavic,* 2009-Ohio-1028, at ¶ 14, citing *Wyss.*

{¶ 39} The question remains regarding how are R.C. 3109.04(E)(2)(a) through (d), particularly subparts (c) and (d), are read in pari materia with subpart (E)(1), and the entire statute for that matter.

{¶ 40} The trial court recognized, as do I, that *Fisher* did not analyze R.C. 3109.04(E)(2)(c). However, the overarching rationale of *Fisher* is that because a shared-parenting *decree* allocates parental rights and responsibilities to *both parents*, R.C. 3109.04(E)(1)(a) mandates a showing of a change in circumstances when contemplating a modification in that situation, just as in the situation where the original *decree* that involves a visitation plan, and *not* a shared parenting plan, makes the allocation to *one parent*. That the majority in *Fisher* did not discuss (E)(2)(c), and that the dissent did not discuss how to read that section in pari materia with (E)(1)(a), obviously has led to multiple, conflicting interpretations of that subpart within and between the districts. However, this omission cannot be construed to mean that despite the articulated legislative policy to protect children from parental tug-of-wars, recognized by the Ohio Supreme Court and this district, such custody disputes would be permitted to occur in the limited subset of decrees that originally designated both parents as residential parent and included a shared-parenting plan.[3]

---

[3] Where the inverse to this case occurs, namely, the original decree allocated parental rights and responsibilities to *one parent* and subsequently shared-parenting is sought, R.C. 3109.04(E)(1)(b) provides: "One or both of the parents under a prior decree allocating parental rights and responsibilities for the care of children *that is not a shared parenting decree* may file a motion requesting that the prior decree be modified to give both parents shared rights and responsibilities for the care of the children. The motion shall include both a request for modification of the prior decree and a request for a shared parenting order that complies with division (G) of this section. Upon the filing of the motion, *if the court determines that a modification of the prior decree is authorized under division (E)(1)(a) of this section*, the court may modify the prior decree to grant a shared parenting order, provided that the court shall not modify the prior decree to grant a shared parenting order unless the court complies with divisions (A) and (D)(1) of this section and, in accordance with those divisions, approves the submitted shared parenting plan and determines that shared parenting would be in the best interest of the children." (Emphasis added.) Because this subpart expressly includes the change-in-circumstances standard, it reinforces the contention that this statute is too cumbersome because it includes too many circumstances in one statute, which leads to conflicting interpretations to resolve gaps in the statutory language.

{¶ 41} In *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, subsequent to a decree allocating parental rights and responsibilities equally and incorporating a shared-parenting plan, both parents moved to be named sole residential parent. The trial court terminated the shared-parenting plan, as it was in the best interest of the child, and upon consideration of the R.C. 3109.04(F)(1)(a) through (j) factors named Hasenjager the sole residential parent. The appellate court affirmed, concluding first that neither R.C. 3109.04(E)(1)(a), (E)(2)(a), nor (E)(2)(c) applied. And while acknowledging that the trial court characterized it's order as terminating the shared-parenting plan, the appellate court nonetheless held that the legislature's use of the word "term" in (E)(2)(b) allowed the trial court to modify all provisions in a shared-parenting plan, including the allocation of parental rights and responsibilities. *Fisher* at ¶ 6-9.

{¶ 42} The certified question in *Fisher* framed the issue as follows: " 'Is a change in the designation of residential parent and legal custodian of children a "term" of a court approved shared parenting decree, allowing the designation to be modified solely on a finding that the modification is in the best interest of the children pursuant to R.C. 3109.04(E)(2)(b) and without a determination that a "change in circumstances" has occurred pursuant to R.C. 3109.04(E)(1)(a)?' The answer to this question is 'no.' " *Fisher* at ¶ 1.

{¶ 43} *Fisher* explained its answer, holding: "While the designation of residential parent and legal custodian can be modified under R.C. 3109.04(E)(1)(a), that designation cannot be modified under R.C. 3109.04(E)(2)(b), which allows only

for the modification of the terms of a shared-parenting plan." *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546*,* at ¶ 27. The court then discussed the significance of the distinction in the statute between a *plan* and a *decree or order.*

{¶ 44} "An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.

{¶ 45} "However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

{¶ 46} "A plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree." Fisher, 116 Ohio St.3d 53, 2007-Ohio-5589*,* ¶ 29-31.

{¶ 47} Based upon this analysis and its holding, the Supreme Court reversed the judgment of the court of appeals because it had modified the decree designating the residential parent using the incorrect standard, specifically the *plan* modification portion of the statute, (E)(2)(b), rather than the *decree* modification portion of the statute, (E)(1)(a). *Fisher* further noted that the two subparts of the statute had "significantly different standards for modifications, and as a matter of statutory construction, to construe these two sections to apply to the same situation,

specifically modification of the allocation of parental rights and responsibilities, would create inconsistency in the statute." Id. at ¶ 32.

{¶ 48} Turning back to the language of the statute, it bears repeating that R.C. 3109.04(E)(1)(a) provides that the trial court *shall not modify* a prior *decree* allocating parental rights and responsibilities unless a change has occurred in the circumstances of the child "or either of the parents subject to a *shared-parenting decree."* (Emphasis added.) Id. (E)(2) then turns to the modification of shared-parenting *plans,* with the preliminary caveat: "*In addition* to a modification authorized under division (E)(1) of this section." (Emphasis added.) R.C. 3109.04(E)(2). It then describes in subparts (a) and (b) the procedure to follow when the *plan* is *modified* pursuant to motion by either/both parents or the court, which do not apply here. The final subpart, (c), discusses *termination* of the *plan.* The penultimate issue of this appeal is how to read (E)(2)(c) in pari materia with (E)(1)(a)*,* without creating an inconsistency within R.C.3109.04 as a whole.

{¶ 49} Because a shared-parenting *decree* designates which parent or parents will be the residential parent, whereas a shared-parenting *plan* addresses, for example, the visitation each residential parent has, the standard for modifying the *plan* is lower than that for modifying the *decree. Fisher* reasoned that "the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian. The individual or individuals designated the residential parent and legal custodian of a child will have far greater influence over the child's life than decisions as to which school the child

will attend or the physical location of the child during holidays. Further, factors such as the physical location of a child during a particular weekend or holiday or provisions of a child's medical care are more likely to require change over time than the status of the child's residential parent and legal custodian." *Fisher,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546*,* at ¶ 36.

{¶ 50} The trial court here echoed these concerns:

{¶ 51} "[T]ermination of a shared-parenting decree necessarily entails that there is going to be a change in the residential parent of the child. Therefore, since that designation is being modified, it is only logical to apply the same standard that R.C. 3109.04(E)(1)(a) mandates. In addition, termination of shared-parenting decrees altogether is harsher than modifications to a shared-parenting plan. Thus, it is also logical to apply a stricter burden of proof for terminations, such as R.C. 3109.04(E)(1)(a) does with first finding a change in circumstance."

{¶ 52} I agree with the rationale of the majority in *Fisher* and the trial court to require inclusion of the change-in-circumstance standard when determining whether or not to terminate a shared-parenting decree and plan. It is logical to *not require* a showing of a change in circumstances when modifying the shared-parenting *plan.* But given the significance of who is designated the residential parent, and the further significance of avoiding a constant back and forth over whether *a parent or both* parents will be the residential parent, it is logical and statutorily consistent *to require* a showing of a change in circumstances pursuant to R.C. 3109.04(E)(1)(a) *before* the trial court determines that it is in the best interest of the child to *terminate the shared*

*parenting plan* pursuant to (E)(2)(c). In other words, termination of the plan pursuant to (E)(2)(c) presupposes that a change of circumstances has been found by the trial court.

{¶ 53} This is also consistent when considering (E)(2)(d), which provides that in the event the shared-parenting plan is terminated, modification of the decree is made as if no prior determination has been made. This is to reconcile the situation where *both* parents are the residential parent with the presumption in (E)(1)(a) that when applying the modification standards, "the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree." Because *Fisher* held that in a shared-parenting decree, both parents are deemed to be the residential parent, (E)(2)(d) puts both parents on equal footing out of necessity; there isn't a sole residential parent to measure the (E)(1)(a) presumption against when considering the best interest of the child(ren). Thus, (E)(2)(d) directs that the best-interests consideration be made by applying the factors contained in R.C. 3109.04(F) within the context of (A), (B), and (C), discussed above, which delineate the procedures for designating the residential parent.

{¶ 54} As noted above, the cumbersome nature of the language in R.C. 3109.04 is readily apparent, given the varying interpretations between and within appellate districts. Further, this is apparent from a close reading of the cases discussed by the majority, giving them less persuasive value regardless of how they resolve the applicability of (E)(1)(a). For example, I agree with the majority that we can find guidance on this issue from *Posey* or *Sims.* While *Posey* extensively quotes

*Fisher* and holds that where the designation of the residential parent is being modified, a change of circumstance must be shown and then noted that the trial court failed to make that determination, it still affirmed the trial court's modification of the residential-parent designation, *Posey,* 2011-Ohio-1165*,* at ¶12. And *Sims* notes only that the magistrate in that case relied on *Fisher,* but then misstates the holding. *Sims,* 2008-Ohio-6442*,* at ¶ 5.

{¶ 55} But *Beismann, Rogers,* and *Poshe* likewise lack persuasive value because those cases also misstate the holding in *Fisher* ("a mere change in the designation of the residential parent and legal custodian did not constitute a termination of the shared parenting plan, but rather only a modification of the plan.") *Beismann,* 2008-Ohio-984, at ¶ 10*, Rogers,* 2008-Ohio-1790*,* at ¶10*,* and *Poshe,* 2011-Ohio-1165, at ¶ 18. *Fisher* held that the designation of the residential parent was made in a *decree* not a *plan*, thus the designation can only by modified in the *decree* via (E)(1)(a), it cannot be a term of a plan and cannot be modified in the *plan* via (E)(2)(b). *Fisher* at ¶ 29, 31. Moreover, the Supreme Court did not characterize modification as a "mere" change; it held that the designation of the residential parent was "critical to the life of a child" because that person "will have far greater influence over the child's life." Id. at ¶ 36. Finally, *Clyburn* did not reach the merits of the issue; it dismissed the appeal based upon a lack of jurisdiction because the trial court's entry was void for vagueness, *Clyburn,* 2010-Ohio-4508, at ¶ 10-13, fn.1:

{¶ 56} "We recognize of course that terminating a shared parenting plan is a very different proposition than terminating a shared parenting decree. See *Fisher v.*

*Hasenjager,* 116 Ohio St.3d 53, 876 N.E.2d 546, 2007-Ohio-5589, at ¶ 29 (Within the custody statute, a "plan" is statutorily different from a "decree" or an "order." ' "). However, we are uncertain that the trial court intended to vacate the plan but sua sponte modify the decree. The companionship schedule attached to the findings of fact and conclusions of law does not appear to satisfy the requirements of a shared parenting plan. See R.C. 3109.04(G) ('A plan for shared parenting shall include provisions covering all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living arrangements, child support obligations, provision for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays, and other days of special importance.') Supposing that a trial court may sua sponte modify a shared parenting decree under R.C. 3109.04, we are uncertain that this is what the trial court intended. No Ohio court we are aware of has considered this issue, but R.C. 3109.04 does not expressly give the trial court the authority to sua sponte modify the decree." Id. at ¶ 10.

{¶ 57} Conversely, *Surgenavic,* 2009-Ohio-1028, as discussed above, and *In re Illig,* 2009-Ohio-916*,* are persuasive, as they both succinctly and correctly cite *Fisher:* "[W]hen a court is seeking to modify the designation of a residential parent, it must apply R.C. 3109.04(E)(1)(a) and find a change in circumstances prior to modifying the shared parenting plan. However, if the court is only seeking to change the method of implementation of a shared parenting plan, by changing its terms, it may apply R.C. 3109.04(E)(2)(b) and look only to what is in the best interest of the

child. *Fisher*, supra." *Illig* at ¶15. Both cases involve the same circumstance as this case; regardless of the terms used by the parties, the original decree designated both parents as residential parent, and a subsequent modification designated only one parent as residential parent, terminated the shared-parenting plan, and adopted a visitation plan.

{¶ 58} In conclusion, when an original decree designates that either one parent is a residential parent or both parents are a residential parent, in either circumstance, R.C. 3109.04(E)(1)(a) requires that the trial court first find that a change in circumstances has occurred. In the circumstance where the residential parent is designated in a prior decree *that is not a shared-parenting decree,* the trial court must secondly find that the change is in the best interest of the child(ren) and (E)(1)(a)(i),(ii) or (iii) applies, ending the trial court's analysis. But in the circumstance where the residential parent is designated in a prior *shared-parenting decree,* the trial court must secondly determine whether terminating the shared-parenting *plan* is in the best interest of the child pursuant to (E)(2)(c), and then thirdly, pursuant to (E)(2)(d), issue a modified *decree* allocating parental rights and responsibilities pursuant to the best interest of the child(ren). This conclusion is consistent with the statutory language and purpose of R.C. 3109.04 as a whole, as well as the Supreme Court's decision in *Fisher* and our decision in *Surgenavic.* For these reasons, I would affirm the decision of the trial court, and certify a conflict to the Supreme Court.